Case No. 3:25-cv-00145

CHRISTOPHER SADOWSKI,

    Plaintiff,

v.

WMM HOLDINGS, LLC d/b/a
THESWORD.COM,

    Defendant.

## COMPLAINT

Plaintiff Christopher Sadowski ("Plaintiff") sues defendant WMM Holdings, LLC d/b/a TheSword.com ("Defendant"), and alleges as follows:

## THE PARTIES

1. Plaintiff is an individual who is a citizen of the State of New Jersey residing in the State of New Jersey.

2. Defendant is a limited liability company organized and existing under the laws of the State of Nevada with its principal place of business located at 4201-B Stuart Andrew Blvd, Charlotte, NC 28217. Defendant's agent for service of process is CT Corporation System, 701 S Carson St., Ste 200, Carson City, NV 89701.

## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

4. This Court has personal jurisdiction over Defendant because it has maintained sufficient minimum contacts with this State such that the exercise of personal jurisdiction over it

would not offend traditional notions of fair play and substantial justice.

5. Venue properly lies in this district pursuant to 28 U.S.C. § 1400(a) because Defendant or its agents reside or may be found in this district. "The language 'may be found' means any district which may assert personal jurisdiction over a defendant." Johnson v. Sky Media, LLC, No. 1:19-3269-MGL-PJG, 2020 U.S. Dist. LEXIS 73016, at *16-17 (D.S.C. Apr. 23, 2020). In other words, "venue is proper generally where personal jurisdiction can be asserted over the corporate defendant." Frontline Test Equip. v. Greenleaf Software, 10 F. Supp. 2d 583, 589 (W.D. Va. 1998).

## FACTS

### I. Plaintiff's Business and History

6. Plaintiff is an award-winning photojournalist and is widely published in some of the world's most important newspapers and magazines, including but not limited to, the New York Post, Daily Mail Online, Reader's Digest, USA Today, New York Times, Fox News, CBS News, NBC News, Boston Globe, Boston Herald, Los Angeles Times, Newsweek Magazine, and People Magazine.

7. Throughout his career, Plaintiff has been self-employed as a professional photographer who specializes in photo-documenting ordinary life and the human condition.

8. Plaintiff travels throughout the New York, New Jersey and Connecticut tri-state area taking photographs that tell a story about tragedy, hope, calamity, joy, discord and renewal.

9. Using state-of-the-art equipment, Plaintiff creates high-end photography licensed by some of the top publishers in this Country. When commissioned for a job, Plaintiff spends countless hours capturing hundreds of photographs and then processing those photographs to ensure they meet customers' requirements.

10. Plaintiff maintains a commercial website (http://www.csnyphoto.com) which describes the photography services offered by Plaintiff, hosts a sample portfolio of photographs taken by Plaintiff, and invites prospective customers to contact Plaintiff to arrange for a professional photo shoot.

11. Plaintiff owns the photographs and serves as the licensing agent with respect to licensing such photographs for limited use by Plaintiff's customers. To that end, Plaintiff's standard terms include a limited, one-time license for use of any single photograph by the customer only. Plaintiff's license terms make clear that all copyright ownership remains with Plaintiff and that its customers are not permitted to transfer, assign, or sub-license any of Plaintiff's photographs to another person/entity.

## II. The Work at Issue in this Lawsuit

12. In 2018, Plaintiff created a professional photograph titled "040918backpage9CS" (the "<u>Work</u>"). A copy of the Work is displayed below:



13. The Work was registered by Plaintiff with the Register of Copyrights on July 2,

2018 and was assigned Registration No. VA 2-108-670. A true and correct copy of the Certificate of Registration pertaining to the Work is attached hereto as **Exhibit "A."**

14. Plaintiff is the owner of the Work and has remained the owner at all times material hereto.

15. The Work was licensed to the *New York Post* and published alongside an article titled "Backpage.com shuts down after reports of FBI raid." The foregoing New York Post article (immediately below the Work appearing in the article) credits Plaintiff as the author/creator of the Work – an attribution known in the industry as a "gutter credit" (available at https://web.archive.org/web/20180719113601/https://nypost.com/2018/04/06/backpage-com-shuts-down-after-reports-of-fbi-raid/):



III. **Defendant's Unlawful Activities**

16. Defendant is a software company offering a video on demand solution to web-based businesses. Defendant owns and operates thesword.com, a website that covers gay news and lifestyle, including the gay adult industry.

17. Defendant advertises/markets its business through its websites (https://www.wmmholdings.com/ and https://www.thesword.com/) and other forms of advertising.

18. On April 9, 2018 (within three months between first publication and Plaintiff's above-referenced copyright registration of the Work), Defendant displayed and/or published the Work on its website, webpage, and/or social media (at https://www.thesword.com/2018/04/page/6):



19. A true and correct copy of screenshots of Defendant's website, webpage, and/or social media, displaying the copyrighted Work, is attached hereto as **Exhibit "B."**[1]

20. In publishing the Work online, Defendant cropped the Work so as to remove Plaintiff's gutter credit. The remaining details of the photographs, however, unequivocally show the photographs on Defendant's website, webpage, and/or social media to be the same.

21. Defendant is not and has never been licensed to use or display the Work. Defendant never contacted Plaintiff to seek permission to use the Work in connection with Defendant's

---

[1] Certain pornographic images have been redacted from the screenshot. An unredacted copy of the screenshot is available to the extent requested.

website, webpage, and/or social media – even though the Work that was copied is clearly professional photography that would put Defendant on notice that the Work was not intended for public use.

22. Defendant utilized the Work for commercial use.

23. Upon information and belief, Defendant located a copy of the Work on the internet and, rather than contact Plaintiff to secure a license, simply copied the Work for its own commercial use.

24. Through his ongoing diligent efforts to identify unauthorized use of his photographs, Plaintiff discovered Defendant's unauthorized use/display of the Work in January 2024. Following Plaintiff's discovery, Plaintiff notified Defendant in writing of such unauthorized use.

25. All conditions precedent to this action have been performed or have been waived.

## COUNT I – COPYRIGHT INFRINGEMENT

26. Plaintiff re-alleges and incorporates paragraphs 1 through 25 as set forth above.

27. Each photograph comprising the Work is an original work of authorship, embodying copyrightable subject matter, that is subject to the full protection of the United States copyright laws (17 U.S.C. § 101 *et seq.*).

28. Plaintiff owns a valid copyright in each photograph comprising the Work, having registered the Work with the Register of Copyrights and owning sufficient rights, title, and interest to such copyright to afford Plaintiff standing to bring this lawsuit and assert the claim(s) herein.

29. As a result of Plaintiff's reproduction, distribution, and public display of the Work, Defendant had access to the Work prior to its own reproduction, distribution, and public display

of the Work on its website, webpage, and/or social media.

30. Defendant reproduced, distributed, and publicly displayed the Work without authorization from Plaintiff.

31. By its actions, Defendant infringed and violated Plaintiff's exclusive rights in violation of the Copyright Act, 17 U.S.C. § 501. Defendant's infringement was either direct, vicarious, and/or contributory.

32. Defendant's infringement was willful as it acted with actual knowledge or reckless disregard for whether its conduct infringed upon Plaintiff's copyright. Notably, Defendant itself utilizes a copyright disclaimer on its website ("Copyright © 2024"), indicating that Defendant understands the importance of copyright protection and intellectual property rights and is actually representing that it owns each of the photographs published on its websites. See, e.g., Bell v. ROI Prop. Grp. Mgmt., LLC, No. 1:18-cv-00043-TWP-DLP, 2018 U.S. Dist. LEXIS 127717, at *3 (S.D. Ind. July 31, 2018) ("[T]he willfulness of ROI's infringement is evidenced by the fact that at the bottom of the webpage on which the Indianapolis photograph was unlawfully published appeared the following: 'Copyright © 2017.' By placing a copyright mark at the bottom of its webpage that contained Mr. Bell's copyrighted Indianapolis Photograph, Mr. Bell asserts ROI willfully infringed his copyright by claiming that it owned the copyright to everything on the webpage."); John Perez Graphics & Design, LLC v. Green Tree Inv. Grp., Inc., Civil Action No. 3:12-cv-4194-M, 2013 U.S. Dist. LEXIS 61928, at *12-13 (N.D. Tex. May 1, 2013) ("Once on Defendant's website, Defendant asserted ownership of Plaintiff's Registered Work by including a copyright notice at the bottom of the page. Based on these allegations, the Court finds Plaintiff has sufficiently pled a willful violation…."). Defendant clearly understands that professional photography such as the Work is generally paid for and cannot simply be copied from the internet.

7
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 3:25-cv-00145-GCM     Document 1     Filed 02/27/25     Page 7 of 11

33. Plaintiff has been damaged as a direct and proximate result of Defendant's infringement.

34. Plaintiff is entitled to recover his actual damages resulting from Defendant's unauthorized use of the Work and, at Plaintiff's election (pursuant to 17 U.S.C. § 504(b)), Plaintiff is entitled to recover damages based on a disgorgement of Defendant's profits from infringement of the Work, which amounts shall be proven at trial.

35. Alternatively, and at Plaintiff's election, Plaintiff is entitled to statutory damages pursuant to 17 U.S.C. § 504(c), in such amount as deemed proper by the Court.

36. Pursuant to 17 U.S.C. § 505, Plaintiff is further entitled to recover his costs and attorneys' fees as a result of Defendant's conduct.

37. Defendant's conduct has caused and any continued infringing conduct will continue to cause irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to a permanent injunction prohibiting infringement of Plaintiff's exclusive rights under copyright law.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has infringed Plaintiff's copyrights in the Work;

b. A declaration that such infringement is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 505;

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys,

successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly infringing Plaintiff's copyrights or continuing to display, transfer, advertise, reproduce, or otherwise market any works derived or copied from the Work or to participate or assist in any such activity; and

g. For such other relief as the Court deems just and proper.

## COUNT II – REMOVAL OR ALTERATION OF COPYRIGHT MANAGEMENT INFORMATION

38. Plaintiff re-alleges and incorporates paragraphs 1 through 25 as set forth above.

39. As evidenced above, Plaintiff's name appeared in a gutter credit near each photograph comprising the Work identifying Plaintiff as the owner/creator of the Work. The gutter credit qualifies as protectable copyright management information identifying Plaintiff as the owner/creator of the Work.

40. Defendant knowingly and with the intent to enable or facilitate copyright infringement, removed or altered the copyright management information from the Work in violation of 17 U.S.C. § 1202(b).

41. Defendant committed these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

42. If Defendant did not remove or alter the copyright management information itself, Defendant caused, directed, and authorized others to commit these acts knowing or having reasonable grounds to know that it will induce, enable, facilitate, or conceal infringement of Plaintiff's rights in the Work.

43. As a direct and proximate result of Defendant's conduct in removing or altering the foregoing copyright management information, Plaintiff has been damaged.

44. Defendant's conduct has caused, and any continued infringing conduct will continue to cause, irreparable injury to Plaintiff unless enjoined by the Court. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. § 1203(b), Plaintiff is entitled to a permanent injunction prohibiting any further violation of 17 U.S.C. § 1202 by Defendant.

**WHEREFORE,** Plaintiff demands judgment against Defendant as follows:

a. A declaration that Defendant has violated Plaintiff's copyrights in the Work by removing or altering or causing to be removed or altered Plaintiff's copyright management information displayed thereon;

b. A declaration that such violation is willful;

c. An award of actual damages and disgorgement of profits as the Court deems proper or, at Plaintiff's election, an award of statutory damages for each infringement of each photograph comprising the Work;

d. Awarding Plaintiff his costs and reasonable attorneys' fees pursuant to 17 U.S.C. § 1203(b)(5);

e. Awarding Plaintiff interest, including prejudgment interest, on the foregoing amounts;

f. Permanently enjoining Defendant, its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries and assigns, and all those in active concert and participation with Defendant, from directly or indirectly further violating Plaintiff's copyrights by further displaying or distributing the Work with its copyright management information removed; and

g. For such other relief as the Court deems just and proper.

Dated: February 27, 2025.  COPYCAT LEGAL PLLC
3111 N. University Drive

10
COPYCAT LEGAL PLLC
3111 N. UNIVERSITY DRIVE, SUITE 301 • CORAL SPRINGS, FL 33065
TELEPHONE (877) 437-6228

Case 3:25-cv-00145-GCM    Document 1    Filed 02/27/25    Page 10 of 11

Suite 301
Coral Springs, FL 33065
Telephone: (877) 437-6228
gabriella@copycatlegal.com


By: /s/ Gabriella Lopez
    Gabriella Lopez, Esq.
    *Of Counsel*